## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DERRICK HOWARD** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO: 05-5014** |
| **BURL CAIN, WARDEN** | * | **SECTION: "J"(6)** |

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.

Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2). Accordingly, it is recommended that the petition be **DENIED WITH PREJUDICE.**

## I. PROCEDURAL HISTORY

On September 23, 1998, petitioner, Derrick Howard, a prisoner incarcerated in the Louisiana State Penitentiary, Angola, Louisiana, was found guilty, following trial by jury,

of attempted aggravated burglary.[1]  On October 23, 1998, Howard was sentenced to 15 years

imprisonment, but the State informed the trial court of its intention to file a multiple bill

against Howard.[2]  Pursuant to the State's multiple bill, the trial court, on August 20, 1999,

conducted a hearing, following which, the court determined Howard to be a third-felony

offender, vacated his previous sentence of 15 years imprisonment and re-sentenced him to

a term of life imprisonment without benefit of probation, parole or suspension of sentence.

On April 24, 2001, pursuant to his appeal, the Louisiana Fifth Circuit Court of Appeal

affirmed Howard's conviction and life sentence.  *See State v. Howard*, 786 So.2d 174 (La.

App. 5 Cir. 2001).  Approximately one year later, on April 26, 2002, the Louisiana Supreme

Court denied Howard's writ application.  *See State v. Howard*, 816 So.2d 846 (La. 2002).

On September 23, 2002, Howard filed an application for post-conviction relief which

the state district court, on October 10, 2003, denied.[3]  On December 1, 2003, the Louisiana

Fifth Circuit Court of Appeal, finding "no error in the trial court's ruling of October 10,

2003," likewise denied Howard's application for post-conviction relief.[4]  On December 17,

---

[1]A copy of the jury verdict is contained in the State rec., vol. 1 of 5.

[2]A copy of the trial court's October 23, 1998 minute entry is contained in the State rec., vol. 1 of 5.

[3]A copy of the district court's October 10, 2003 Order is contained in the State rec., vol. 4 of 5.

[4]Copies of the state appellate court's December 1, 2003 adverse decision are contained in the State rec., vols. 4 and 5 of 5.

2004, the Louisiana Supreme Court denied Howard's writ application.  *See State ex rel. Howard v. State*, 888 So.2d 862 (La. 2004).

Howard filed the instant action for federal habeas corpus relief on August 5, 2005,[5] arguing:  1) That he received ineffective assistance of counsel; 2) that his sentence was unconstitutionally excessive; 3) that the State withheld evidence of a deal which existed with state witness, Joseph Redding; 4) that he was denied his right to confront and cross-examine two state witnesses, Ronald Smith and Patricia Berry; 5) that the prosecution knowingly allowed one of its witnesses, Joseph Redding, to testify falsely; and, 6) that he did not receive a fair trial because the trial judge had a personal interest in the outcome of the trial.  The State, in its original response (rec. doc. no. 11), asserted that the instant action was untimely. However, this court, pursuant to its report and recommendation (rec. doc. no. 15), rejected the State's original response, finding the instant action to have been filed within the applicable prescriptive period.  Accordingly, pursuant to this court's finding, the State has submitted a supplemental response (rec. doc. no. 16) in which it does not contest either the timeliness of the instant action or the fact that Howard has exhausted his state court remedies

---

[5]*See* Federal rec., doc. no. 1.  This August 5, 2005 filing date was ascertained via the court's use of the prison "mailbox" rule.  Under this rule, a pleading filed by a prisoner acting pro se is considered to be filed for prescriptive purposes on the date it is delivered to prison officials for mailing, rather than the date it is received by the court.  *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  Generally, the date a prisoner signs his petition or accompanying pauper application is presumed to be the date he delivered it to prison officials for mailing.  *See Colarte v. Leblanc*, 40 F.Supp.2d 816, 817 (E.D. La. 1999); *Magee v. Cain*, 2000 WL 1023423, *4 n.2 (E.D. La. 2000); *Punch v. State*, 1999 WL 562729, *2 n.3 (E.D. La. 1999).

as required under *Rose v. Lundy*, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982).
Accordingly, this court shall review the pertinent facts, then proceed to address the merits
of Howard's claims.

**II.  FACTS**[6]

On April 30, 1997, at approximately 2:30 a.m., three armed men entered the River
Ridge apartment of Joseph Redding and Ronald Smith by kicking in the door of the
apartment.[7]  Two of the intruders, Derrick Howard and Henry Davis, ordered Redding to
get out of bed and get dressed, while the third man, Terrell Perkins, searched the
apartment.  Howard also got Redding's roommate, Ronald Smith, out of bed, brought him
to the front room, instructed him to lie down on the floor and held a gun on him.  In the
meantime, the other two men questioned Redding about the location of drugs and money.
When the three intruders did not find what they were looking for, they directed Redding
to bring them to "where the dope and money at."  Hoping to escape once he was out of
the apartment, Redding told the men that the drugs were in the trunk of his car.  Perkins
and Davis then took Redding and searched the trunk, but brought Redding back to his
apartment when they did not find what they wanted.  Redding then told the men that the
drugs were in his neighbor's apartment.

---

[6]The facts are taken from the state appellate court's opinion on direct appeal, *State v. Howard*,
786 So.2d 174, 177-178 (La. App. 5 Cir. 2001), along with this court's review of the trial transcript.

[7]*See* State rec., vol. 1 of 5, p. 85, lines 20-23.

4

Perkins and Davis then accompanied Redding to the apartment of his neighbor, Patricia Berry.  Redding knocked on Ms. Berry's door, telling her through the closed door that he needed to speak with her.  When she opened the door slightly, the two men forced themselves into her apartment.  When Redding asked Ms. Berry for drugs, she stated that she did not have any drugs and told the men to leave her apartment.  Redding and Davis left Berry's apartment, but Perkins stayed behind.  Davis brought Redding back upstairs to his apartment, where an argument ensued between the two men.  Howard and Davis then took Redding and Smith downstairs at gunpoint and put them into Redding's car.  Howard held the two men at gunpoint while Davis went to get his car.  Redding escaped from the car, went to a neighbor's house and called the police.  When Davis realized Redding was gone, he told Howard to get Perkins from Berry's apartment.  The three men left in Davis' car, but shortly thereafter, were apprehended by police.  Redding and Smith were brought to the scene for a possible identification.  Mr. Redding identified all three men but Smith was only able to identify Davis and Howard.

At trial, Mr. Redding testified that his girlfriend's stone ring, his Tommy Hilfiger watch, and his house and car keys were stolen from his apartment that night.  The police recovered Mr. Redding's keys from the floorboard of Davis' vehicle.

Henry Davis, the only defendant to testify, told the jury that, in the early morning hours of April 30, 1997, he and his brother, Derrick Howard, and Terrell Perkins went to Redding's apartment to get Davis' money back for "bad drugs" that Redding had sold him

5

earlier that day.  Davis testified that they knocked on Redding's door and he let them into

his apartment.  He denied that he and his companions kicked in Redding's front door.

Davis stated that none of them were armed with guns.

## III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a

comprehensive overhaul of federal habeas corpus legislation, including 28 U.S.C. § 2254.

Amended subsections 2254(d)(1) and (2) contain revised standards of review for

questions of fact, questions of law and mixed questions of fact and law where there has

been an adjudication on the merits in State court proceedings.

State court determinations of questions of law and mixed questions of law and fact

are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference unless they were

"contrary to, or involved an unreasonable application of clearly established Federal law,

as determined by the Supreme Court of the United States."  *Hill v. Johnson*, 210 F.3d

481, 485 (5th Cir. 2000).  The United States Supreme Court has advised that:

Under the "contrary to" clause, a federal habeas corpus court may grant the writ if
the state court arrives at a conclusion opposite to that reached by this Court on a question
of law or if the state court decides a case differently than this Court has on a set of
materially indistinguishable facts.  Under the "unreasonable application" clause, a federal
habeas court may grant the writ if the state court identifies the correct governing legal
principle from this Court's decisions but unreasonably applies that principle to the facts
of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 1056, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); *Hill*, 210 F.3d at 485.  Questions of fact found by the state court are "presumed to be correct ... and we will give deference to the state court's decision unless it `was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill*, 210 F.3d at 485, *quoting* 28 U.S.C.§ 2254(d)(2).

## IV.  ANALYSIS

### A.  Excessive Sentence

Howard, in connection with his attempted aggravated burglary conviction, was originally sentenced to 15 years incarceration at hard labor.  However, after being adjudicated to be a third felony offender, Howard's 15-year sentence was vacated and he was sentenced, pursuant to the provisions of LSA-R.S. 15:529.1A(1)(b)(ii), to life imprisonment.  Howard argues that the above sentence is unconstitutionally excessive "under the circumstances of this case" because "he was not the leader of the three defendant's [sic]."[8]  Further, Howard contends that "an attempted aggravated burglary against a known drug dealer does not present the same threat to the community at large as a crime against a non-criminal citizen", and "the crime of violence provision in La. R.S.

---

[8]*See* Federal rec., doc. no. 1, petitioner's supporting memorandum at p. 12.

15:529.1 was designed to protect non-criminal citizens, not alleged drug dealers like the victims in this case."[9]

In support of his excessiveness argument, Howard cites only state law.  However, even if one assumes that the sentence was, in fact, violative of state law, absent a constitutional violation, Howard is not entitled to federal habeas corpus relief.  *See generally Vardas v. Estelle*, 715 F.2d 206, 208 (5th Cir. 1983), *cert. denied*, 465 U.S. 1104, 104 S.Ct. 1603, 80 L.Ed.2d 133 (1984).

As for Howard's life sentence being unconstitutional, the Supreme Court has specifically rejected the principle that the Eighth Amendment contains a proportionality guarantee.  *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991).[10]  If a sentence is within the statutory limits, a federal habeas court will not upset the terms of that sentence unless it is so disproportionate to the offense as to be completely arbitrary and shocking.  *Bonner v. Henderson*, 517 F.2d 135, 136 (5th Cir. 1975); *see also Smallwood v. Johnson*, 73 F.3d 1343, 1347 (5th Cir. 1996) (emphasizing that a federal

---

[9] *See* Federal rec. doc. no. 1, petitioner's supporting memorandum at p. 12.

[10] In *Harmelin*, 501 U.S. at 962, 111 S.Ct. at 2684, quoting *Rummel v. Estelle*, 445 U.S. 263, 274, 100 S.Ct. 1133, 1139, 63 L.Ed.2d 382 (1980), the Supreme Court reaffirmed that "'for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence actually imposed is purely a matter of legislative prerogative.'"

court will not review a state sentencing without a threshold showing that the sentence is "grossly disproportionate to the offense").

In addressing the alleged constitutional excessiveness of Howard's life sentence as a third-felony offender, the Louisiana Fifth Circuit Court of Appeal reasoned:

> The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. The sentence imposed will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits. *State v. Lassere*, 95-1009 (La.App. 5 Cir. 10/1/96), 683 So.2d 812, *writ denied*, 96-2655 (La.4/18/97), 692 So.2d 445.
>
> The Louisiana Supreme Court has repeatedly upheld the constitutionality of the Habitual Offender Law, and accordingly, the minimum sentences it imposes are likewise presumed to be constitutional. *State v. Johnson*, 97-1906 (La.3/4/98), 709 So.2d 672; *State v. Dorthey*, 623 So.2d 1276 (La.1993).
>
> A sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality. In order to rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that he is exceptional, that is, that because of unusual circumstances he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. Downward departures from the minimum sentence under the Habitual Offender Law should occur only in rare situations. *State v. Lindsey*, 99-3256 (La.10/17/00), 770 So.2d 339; *State v.*

*Johnson,* supra; *State v. Dorthey, supra.*

> In this case, defendant has made no showing of exceptional circumstances sufficient to justify a downward departure from the mandatory sentence of life imprisonment.  We therefore see no error in the sentence imposed by the trial judge.

*Howard*, 786 So.2d at 179.

This court finds that the above-reasoning does not constitute an unreasonable application of pertinent Supreme Court law to the facts of this case.  *See Williams*, 120 S.Ct. at 1523.[11]  Accordingly, Howard's claim for habeas relief based upon the alleged excessiveness of his sentence is without merit.

### B.  Ineffective Assistance of Counsel

Howard offers two arguments in support of his ineffective assistance of counsel claim.  First, Howard contends that counsel was unconstitutionally ineffective due to counsel's failure to challenge the alleged excessiveness of his life sentence.  Second, Howard argues that counsel was unconstitutionally ineffective based upon counsel's miscommunication that if he was found guilty, he faced a maximum 60-year sentence, rather than a life sentence.  Howard asserts that if he had known he faced the prospect of receiving a life sentence if found guilty, rather than a maximum 60-year sentence, he would have taken the plea agreement offered by the State prior to trial.

---

[11]Discussion regarding Supreme Court's reasoning in *Williams* is set forth *supra* at pp. 6-7.

The seminal Supreme Court decision regarding ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984), wherein the Court held that in order to prove that counsel was unconstitutionally ineffective, petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense.  If a court finds that petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong.

Under the deficient performance prong of the *Strickland* test, "it is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371, 113 S.Ct. 838, 844, 122 L.Ed. 2d 180 (1993), *citing Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066.  To prove prejudice under the *Strickland* standard, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

In addressing petitioner's ineffectiveness claim based upon counsel's failure to challenge the alleged excessiveness of his sentence, specifically, counsel's failure to file a motion to reconsider petitioner's life sentence, the Louisiana Fifth Circuit first reviewed the applicable law enunciated by the Supreme Court in *Strickland*, *supra*:

> In assessing a claim of ineffective assistance of counsel, a two-pronged test is employed.  The defendant must show that (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him.  *Strickland v.*

11

> *Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  It is not
> enough for the accused to make allegations of ineffectiveness; the accused
> must couple these allegations with a specific showing of prejudice.  *State v.
> Brown,* 99-172 (La.App. 5 Cir. 9/28/99), 742 So.2d 1051.

*Howard*, 786 So.2d at 178.  Thereafter, the state appellate court concluded that based

upon its finding that Howard's sentence was not excessive, Howard had failed to make

the requisite prejudice showing with regard to his claim that counsel was ineffective due

to his failure to file a motion to reconsider sentence.  *Id.*  The court's finding in this

regard does not represent an unreasonable application of *Strickland*, *supra*, and, as such,

Howard's claim for habeas relief based upon counsel's alleged ineffectiveness for failing

to challenge his sentence is without merit.  *See Williams, supra.*

Howard's claim that counsel was unconstitutionally ineffective by virtue of

counsel's failure to inform him that if he was found guilty, he faced a life sentence as a

third-felony offender, rather than a maximum 60-year sentence as a second-felony

offender, is likewise subject to dismissal due to a failure to make the requisite prejudice

showing.  As the State notes in its supplemental response (rec. doc. no. 16, pp. 9-10),

though counsel may have been under the impression that Howard was a double offender

subject to a maximum 60-year sentence, rather than a triple offender subject to a life

sentence, Howard, himself, was aware of his criminal history.  Further, Howard, along

with his co-defendants, were specifically informed prior to the commencement of trial that a "triple bill" carried with it a "mandatory life sentence".[12]

Additionally, when one examines the difference in the sentence Howard faced if he accepted the plea agreement and the sentence which counsel advised him he faced if he opted to go to trial and was found guilty, and compares it with the sentence which Howard, in actuality, faced following the jury's guilty verdict, his claim that if not for counsel's misinformation, he would have taken the plea agreement, does not "ring true". Under the plea agreement offered by the State, Howard would not be multiple billed and he faced a sentence ranging from 12 to 15 years.[13]  In contrast, counsel advised that if Howard opted to go to trial and was found guilty, he faced a sentence "in the sixty-year range."[14]  The difference in the two sentences was 45 years, with the potential 60-year sentence, which Howard knew he faced if he rejected the plea agreement and was adjudicated guilty at trial, essentially amounting to a life sentence as Howard, at the time of his release, would be over the age of 80.[15]  Given this fact, the court finds disingenuous Howard's claim that if he had known he faced a life sentence, rather than a 60-year sentence, he would have opted to take the plea agreement rather than proceed to trial.

---

[12]*See* State rec., vol. 1 of 5, p. 62, lines 17-22.

[13]*See* State rec., vol. 1 of 5, p. 60, lines 16-26.

[14]*See* State rec., vol. 1 of 5, p. 62, lines 23-25.

[15]Howard, at the time of his sentencing, was 24 years old.  *See* State rec., vol. 1 of 5, p. 37.

Accordingly, Howard has failed to show that he was prejudiced by counsel's alleged deficiency in failing to advise that he faced, as a third felony offender, a life sentence if adjudicated guilty at trial and, therefore, is not entitled to habeas corpus relief.

### C.  State Withheld Evidence of Deal with State Witness, Joseph Redding/Allowed Redding to Offer Perjured Testimony

Howard contends that his constitutional rights were violated by virtue of the fact that the State made a deal, which it failed to disclose, with witness Joseph Redding to the effect that in exchange for his testimony against Howard and his co-defendants, the State would give him favorable treatment in connection with pending charges.  Further, Howard charges that the State allowed Redding to offer perjured testimony to the effect that no such deal existed.

As the Louisiana Fifth Circuit Court of Appeal observed and as a review of the trial transcript confirms, Joseph Redding, on direct examination, admitted that he had a prior conviction and presently had charges pending against him.

> According to the trial transcript, Joseph Redding, the state's witness, testified that he was currently incarcerated awaiting trial on theft and aggravated battery charges.  He also admitted that he had a previous possession of cocaine conviction, for which he was on probation when he was arrested for aggravated battery. As a result of that arrest, his probation officer filed a rule to revoke probation, which was pending when he testified at trial.

*Howard*, 786 So.2d at 179-180.[16]  Thereafter, the prosecution directly asked Redding:

"'Has the D.A.'s office made any kind of deal with you at all with respect to any of your

charges or the probation revocation or the case, the theft case, that's pending or the

aggravated battery arrest or anything else?'"  *Id*. at 180 (quoting trial transcript, State rec.,

vol. 1 of 5, p. 133, lines 2-6).  In response, Redding stated:  "'No, they haven't.'"  *Id*.

(quoting trial transcript, State rec., vol. 1 of 5, p. 133, line 7).  Redding confirmed this

testimony on cross-examination when, in response to defense counsel's question as to

whether he felt "'there would be any negative repercussions ... from the district attorney's

office if [he] had chosen not to testify here today?'", Redding responded:  "I'm testifying

here on my own free will.'"  *Id*. (quoting trial transcript, State rec., vol. 1 of 5, p. 167,

lines 15-19).

     The Louisiana Fifth Circuit rejected the pertinent claims based upon its factual

finding that Howard's allegation, that the State offered Joseph Redding a deal in

exchange for his testimony, was untrue.  In making this factual determination, the state

appellate court reviewed the evidence submitted by Howard in support of his assertion

that a deal had been struck between the prosecution and Redding.

       [Howard] supports his claim with a copy of the case review [and a copy of a
       minute entry] that indicates that, on the day after he testified against
       [Howard and co-defendants, Davis and Perkins], Redding pled guilty to

---

[16]*See also* State rec., vol. 1 of 5, p. 131, lines 10-32; p. 132, lines 1-32; and, p. 133, line 1.

theft, received a suspended sentence, and was placed on probation.  Further, [Howard] presents an affidavit from his mother in which she claims that she overheard an assistant district attorney make a deal with Redding that he would receive probation in exchange for his testimony.  Finally, [Howard] presents an affidavit from a cellmate of Redding's alleging that Redding stated that he had a deal with the [S]tate and he also coerced two witnesses into lying for him.

*Howard*, 786 So.2d at 181-182.  The state appellate court then compared the above support with Redding's direct testimony to the effect that he made "no deal" with the district attorney's office in exchange for his testimony and that this direct testimony was not controverted on cross-examination.  *Id*. at 182.  The court, in connection with Howard's claim that the State withheld evidence of its deal with Redding, concluded:

> Here, the case review ... does suggest that the witness pled guilty to theft and was placed on probation the day after [Howard, Davis and Perkins] were convicted but that alone is not objective proof that the witness had a deal with the [S]tate.  As noted previously, the witness expressly denied that he had a deal with the [S]tate....  Therefore, in light of the fact that the record does not contain evidence of a deal, we find that there was nothing for the [S]tate to disclose to [Howard].  This assigned error is without merit.

*Id*.  In connection with his claim that the State allowed Redding to offer perjured testimony, the Louisiana Fifth Circuit concluded:  "Again, the record does not support [Howard's] claim because the assistant district attorney, on direct examination, elicited testimony from Redding that no one from the district attorney's office had made a deal with him."  *Id*. at 183.

16

As the State points out in its supplemental response (rec. doc. no. 16, p. 23), the state appellate court's finding of fact, that petitioner's allegation of a deal between the prosecution and witness Redding was untrue, is, under the provisions of 28 U.S.C. §2254(e)(1), entitled to a presumption of correctness.  Howard, as required under §2254(e)(1), has the burden of rebutting this "presumption of correctness by clear and convincing evidence."  Howard has failed to meet this burden; accordingly, his claim for habeas corpus relief must be denied.

### D.  Denied Right to Confront and Cross-Examine Two State Witnesses

Howard asserts that his constitutional right to confront witnesses was violated by virtue of the trial court's ruling to the effect that witnesses Ronald Smith and Patricia Berry could not be examined with respect to the alleged illegal drug activities of Joseph Redding and the numerous people coming in and out of Redding's apartment as a result of his drug activities.  Howard argues that such questioning should have been allowed for the purpose of challenging Redding's credibility.[17]

A review of the trial transcript reflects that defense counsel desired to question Ronald Smith with regard to the numerous people he observed "going in and out" of Redding's apartment and with respect to "whether [Smith had] seen Joseph Redding deal

---

[17]*See* Federal rec., doc. no. 1, petitioner's supporting memorandum at p. 19; *see also* doc. no. 10, Brief in Support of Motion to Expand the Record at p. 7.

drugs out of the apartment".[18]  The trial court determined, and the appellate court agreed, that defense counsel could not engage in such a line of questioning because it was irrelevant.  With respect to allowing testimony concerning Redding's alleged drug dealing, the Louisiana Fifth Circuit reasoned:  "The possibility that the victim [Redding] was a drug dealer ... does not negate intent or commission of the crime [aggravated burglary] that defendant was charged with and, therefore, was not relevant at trial." *Howard*, 786 So.2d at 181.  With respect to allowing testimony regarding the inflow and outflow of people in Redding's apartment, the trial court reasoned that such testimony was irrelevant in light of Smith's testimony that defendants were not, on the night in question, freely admitted into Redding's apartment, but rather, "kicked in" the door to gain entry.[19]

A criminal defendant has a constitutional right, under the Sixth Amendment, to confront at trial the prosecution's witnesses by engaging said witnesses in cross-examination.  A trial judge, however, has "wide latitude" to "impose reasonable limits on such cross-examination" based upon concerns regarding, among other things, harassment, prejudice, repetitiveness and relevancy.  *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986).

---

[18]*See* State rec., vol. 1 of 5, p. 109, lines 1-11.

[19]*See* State rec., vol. 1 of 5, p. 109, lines 18-32; p. 110, lines 1-6.

Based upon the above, the court finds that the trial court, in Howard's case, did not abuse his discretion in connection with limiting the cross-examination of the pertinent witnesses based upon his finding that the testimony sought to be elicited by virtue of the desired cross-examination was not relevant.  The court notes that the only basis provided by Howard to justify the desired cross-examination was to attack Redding's credibility.  However, jurors, by virtue of Redding's own testimony, were aware of Redding's drug activity, along with other "bad acts" on his part.  Specifically, Redding admitted on direct examination that he had been convicted on the charge of possession of cocaine and that he was currently facing charges of theft and aggravated battery.[20]  Accordingly, the court finds Howard's claim for habeas relief based upon the limitation placed upon the cross-examinations of witnesses Ronald Smith and Patricia Berry to be without merit.

### E.  Trial Court's Personal Interest in Case

Finally, Howard argues that he did not receive a fair trial by virtue of the trial court's alleged "personal interest in the outcome of the case."  Specifically, Howard contends that the trial judge "made a secret plea bargain deal with Joseph Redding", "afforded [Joseph Redding] special judicial treatment", and "made biased rulings that prevented [defense counsel] from cross examining state witnesses."[21]

---

[20]*See* discussion *supra* at pp. 14-15.

[21]*See* Federal rec., doc. no. 1, Howard's supporting memorandum at p. 23.

Howard raised these same claims in connection with his state direct appeal.  With regard to the alleged "secret plea bargain deal" and "special judicial treatment", the Louisiana Fifth Circuit Court of Appeal made the factual finding that "there is no support in the record" for Howard's allegations.  *Howard*, 786 So.2d at 183.  As noted earlier, this court must presume the above finding of fact to be correct absent a showing, "by clear and convincing evidence", that said finding is incorrect.  *See* 28 U.S.C. § 2254(e)(1). Howard has failed to make such a showing; therefore, the court finds that petitioner was not denied a fair trial by virtue of an alleged "secret plea bargain deal" and/or "special judicial treatment".

With regard to petitioner's claim that he was denied a fair trial by virtue of the trial court's "biased" ruling limiting the cross-examination of state witnesses, specifically, Ronald Smith and Patricia Berry," as noted earlier, the trial court's ruling in this regard was not based upon any bias against Howard, but rather, based upon the finding that the information sought to be elicited by virtue of the desired cross-examination of Smith and Berry was irrelevant.  Accordingly, petitioner's claim for habeas relief based upon the alleged unfairness of his trial is without merit.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the application for federal habeas corpus relief filed on behalf of petitioner, Derrick Howard, be **DENIED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this __28th__ day of _____September_____, 2007.

LOUIS MOORE, JR.

United States Magistrate Judge